IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANNIE BAO, | CIVIL ACTION NO. |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| NORTHWESTERN UNIVERSITY, | |
| Defendant. | |

## COMPLAINT

Plaintiff Annie Bao files this Complaint against her former employer, Northwestern University ("Northwestern"), seeking relief for the discrimination, harassment, and retaliation she was subjected to and the unlawful termination of her employment by Northwestern.

## PARTIES

1. Bao is an adult individual who currently resides in Evanston, Illinois.

2. Northwestern is a private research and teaching university located in Evanston, Illinois.

3. At all relevant times, Northwestern continuously employed more than 15 employees and was a covered employer as defined by Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 2000e *et seq.*) and the Illinois Human Rights Act ("IHRA" – 775 ILCS §§ 5/1–101 *et seq.*).

4. At all relevant times, Northwestern continuously employed more than 50 employees within a 75-mile radius of the office Plaintiff worked at and was a covered employer as defined by the Family and Medical Leave Act ("FMLA" – 29 U.S.C. §§ 2601 *et seq.*).

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that Plaintiff's claims arise under the laws of the United States and Plaintiff seeks redress for violations of federal laws. The Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367, because such claims are so closely related to Plaintiff's federal claims that they form part of the same case or controversy.

6.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (b)(2) as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## FACTUAL BACKGROUND

**A.  Bao and Her Commitment to Improving the Health of Others**

7.  Bao is a licensed marriage and family therapist, educator, mental health and wellness consultant, behavioral health analyst, and writer, who has dedicated her life's work and career to supporting and improving the lives of her patients, students, and colleagues.

8.  Bao holds bachelor's degrees in Human Development & Family Studies and Sociology; a master's degree in Marriage and Family Therapy; has completed work towards a doctorate in Marriage and Family Therapy; and a doctoral fellowship in Medical Family Therapy, specializing in Families, Illness & Collaborative Healthcare.

9.  Bao has purposefully pursued lines of work which allow her to design, build, and cultivate effective mechanisms of healthcare and strategically develop equitable, adaptable, & sustainable solutions to implement and maintain those mechanisms.

10.  By all accounts, Bao is an expert in her fields, and she is committed to using her knowledge and training to help as many people as she can, however she can.

11. In 2012, Bao chose to work for Northwestern's Graduate Program in Genetic Counseling at the Center for Genetic Medicine (the "Genetic Counseling Program").

**B.** **Northwestern and Its Failed Commitment to Equity and Inclusion**

12. Northwestern touts the following mission throughout its literature: "Northwestern is committed to excellent teaching, innovative research and the personal and intellectual growth of its students in a diverse academic community."

13. At Northwestern, Bao realized that certain managerial-level employees at Northwestern were intent on treating her differently because she is Asian American. For instance,

   a. Bao was the only leadership member of her team without a title of director when other, white employees who worked the same or similar positions were given director-level titles.

   b. Bao was the only leadership member of her team who was not provided health insurance or benefits when other, white employees who worked the same or similar positions were provided those benefits.

   c. A white employee, Elizabeth Leeth, was hired by Northwestern after Bao's employment started, and was paid more and given the title of "Assistant Director" even though she performed similar work to Bao.

   d. Bao was reprimanded for alleged workplace rules violations that were not enforced for white employees, such as throwing a dinner celebration for a student (when they completed defense of their thesis) or wearing casual footwear for health-related concerns.

14. Despite those obstacles, Bao continued to perform all the essential duties of her job and she performed them well.

15. Still, Bao was forced to endure and manage other hostilities at work, which included dealing with an incident during which Leeth called a Muslim student a "towel head." Bao reported Leeth to Northwestern and requested resources from the university to provide training for diversity, sensitivity, and inclusiveness.

16. Initially, Northwestern was receptive to Bao's request. As time passed, it became clear that Northwestern had no intention of providing Bao with any resources to combat racial hostilities within the university.

17. By withholding support for Bao's initiative, Northwestern implicitly tolerated a culture which allowed racial hostilities to develop. In 2018, things steadily grew worse in the following ways:

    a. Cathy Wicklund, who is the Director of the Graduate Program in Genetic Counseling at Northwestern, told a non-white student in one of Bao's classes that they were chosen to be in a diversity video for "obvious reasons."

    b. While Bao was giving a lecture about self-awareness and bias that addressed healthcare disparities, Leeth attacked and dismissed portions of the lecture, including the validity of research related to race-based medicine.

    c. Leeth began referring to Bao as a "loser" when communicating with Bao (individually and with others).

18. As time passed, racially discriminatory and harassing behavior went largely unchecked at Northwestern.

19. During a February 2019 meeting, leadership throughout the Genetic Counseling Program were discussing how to address the concerns of a Korean student who was experiencing hostility from faculty and classmates because of her race. In response, Leeth suggested that Bao handle the situation by stating, "yeah, what do you think you chink."

20. Initially, Bao did not report this incident to Wicklund, because Wicklund had a close personal relationship with Leeth. Instead, Bao discussed and confirmed this incident with Amy Swanson, who was the Assistant Director for Northwestern's Genetic Counseling Program.

21. Swanson admitted to overhearing Leeth call Bao a chink, and Swanson reported the incident to Wicklund.

22. Wicklund spoke with Bao and told Bao that she needed to forgive Leeth and remarked that is just how she is. When Bao asked what Wicklund intended to do about the incident, Wicklund responded by expressing fear that Leeth would be disciplined if this matter was formally investigated.

23. At no point in time did Wicklund attempt to address Bao's concerns, investigate the incident, or take steps to ensure that nothing like this would happen again.

24. A few weeks later, leadership from the Genetic Counseling Program were reviewing applications during a meeting when Debra Duquette (Associate Director at Northwestern's Feinberg School of Medicine) and Leeth began saying the names of Asian candidates in a mocking voice that stereotyped how they believed people from Asia might sound when speaking English. Going further, Leeth avoided all subtlety and made sure to deliberately mispronounce the names of all the Asian candidates, ensuring that everyone in the room knew what she was doing.

25. Bao reported this incident to Northwestern on February 22, 2019, and requested that the university take steps to address these repeated hostilities towards racial minorities. Later that day, Bao spoke with Karen Tamburro, who was Northwestern's Director of the Office of Equity.

26. Tamburro spoke with Bao about the incident and provided options if she wished to proceed with an investigation. Moments after Bao's call with Tamburro ended, Wicklund called Bao and demanded that she provide details about her conversation with Tamburro.

27. On February 27, 2019, Bao met with Wicklund, who stated that she still would not discipline Leeth for any of her racially discriminatory and hostile behavior. Instead, Wicklund

5

required Bao to tell her if she intended to move forward with her report against Leeth so that she would not be "caught off guard" if Bao pursued legal action.

28. Later that day, Bao learned that Wicklund invited Leeth to her home. It is believed that Wicklund shared her conversations with Bao to Leeth. It is also believed that Wicklund and Leeth were attempting to disrupt Bao's reporting of these repeated issues of racial discrimination and hostility within the university.

C. **Northwestern's Failures Continue Even After Its Investigation Validates Bao's Reports of Racial Discrimination and Harassment at the University**

29. On March 25, 2019, Bao contacted Tamburro and requested that her reports of racial discrimination and hostility at the university be investigated. As part of the investigation, Bao provided Tamburro with the names of witnesses to these incidents.

30. On April 17, 2019, Tamburro notified Bao that her initial investigation was completed, and that she would be moving forward with a formal investigation into her complaints. During this discussion, Bao asked Tamburro to stop sharing her confidential communications with Wicklund.

31. On June 20, 2019, Tamburro's investigation concluded that a hostile work environment existed within the Genetic Counseling Program.

32. On July 29, 2019, a faculty sanctioning panel convened to discuss the results of the investigation into Leeth's racially discriminatory and harassing behavior while working for Northwestern.

33. On August 23, 2019, the faculty sanctioning panel voted to remove Leeth's leadership title. However, Leeth's title remained unchanged in the university's public-facing documents, such as its website. As a result, it is unclear if any disciplinary action was imposed on Leeth.

**D.     Bao Persistently Pursues Change at Northwestern
to the Detriment of Her Career and Health**

34.     On September 13, 2019, Bao sent a letter to Northwestern, expressing her disappointment with the results of the investigation. Bao indicated to Northwestern that the university would remain a hostile place for minority employees and students unless it addressed systemic and structural racism that existed at Northwestern.

35.     On September 30, 2019, Bao met with Elizabeth McNally, the Director for Northwestern's Center for Genetic Medicine. During this meeting, McNally defended Leeth by telling Bao that Leeth was from a small town where racial "comments" were commonplace, and remarked that "we all know that she has a questionable and offensive sense of humor." McNally also added that she had experienced much worse discrimination as a female physician than Bao did as an Asian American.

36.     In short, McNally reacted as other, white leaders did at Northwestern when confronted with issues of racial discrimination and harassment within the university by telling Bao that she had to endure, ignore these issues rather than seek change, and move on.

37.     Throughout this period, Leeth refused to take any responsibility for her behavior, and she appealed the results of her investigation.

38.     On December 16, 2019, Bao dual-filed a charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Unfortunately, this resulted in additional hostility for Bao.

39.     In early 2020, Bao was verbally attacked by Zev Valancy (Program Coordinator for Northwestern) in front of a class she was teaching.

40. Bao reported her incident with Valancy to Duquette. In response, Duquette told her to "let it go" and told Bao that Valancy was just upset about the university's investigation into Leeth.

41. Wicklund called Bao a few days later and told her that she had asked Human Resources to mediate the incident involving Valancy. Unfortunately, a mediation never occurred and no one from Human Resources ever reached out to Bao.

42. On February 6, 2020, Bao met with Northwestern's Chief Diversity Officer Jabbar Bennett and again requested diversity training, which Northwestern never provided.

E. **Systemic Racism Also Harms Genetic Counseling Program Students**

43. On December 3, 2020, an international student who identifies as Muslim ("Student 1"), sought help from Bao because of Leeth called him a "towel head." Two other students also asked Bao for help because of incidents with Leeth, which included Leeth refusing to provide accommodations for their religion and dismissing their requests to observe Ramadan.

44. Student 1 also told Bao that they had reported these issues to Wicklund, beginning in the fall of 2019, and on several occasions after. Wicklund often responded to Student 1's reports by defending Leeth's behavior and remaking, "Beth has a lot on her plate right now."

45. Bao received additional reports about Leeth, which included Leeth referring to people with disabilities as "tards" and outing a faculty member as LBGTQIA+ during a meeting without their consent.

46. Bao later discovered that other members of her program had intentionally withheld this information about Leeth from her. It is believed that Genetic Counseling Program leaders refused to inform Bao about Leeth's behavior because they knew she would take action to address these persistent issues of racial discrimination and harassment at the university.

47. Other students sought help from Bao because they knew she would take action to help them. And whenever Bao heard other students' concerns about Leeth, Wicklund, Duquette, and other faculty members; Northwestern's failure to support its non-white students; and/or racial discrimination and harassment at the university, that's what Bao did: she took action to stop racial discrimination and harassment at Northwestern.

48. On December 4, 2020, Bao met with McNally, Wicklund, Duquette, and Janet Olivo. During this meeting, Bao reiterated her concerns about Leeth's refusal to abandon her racially discriminatory and harassing conduct towards employees and students at Northwestern. Bao reminded Northwestern that the students who reported concerns about Leeth to her stated that they chose the Genetic Counseling Program because there were non-white individuals who were in positions of leadership.

49. In response, McNally stated that students chose the Genetic Counseling Program for a variety of reasons, and not just because Bao was in a position of leadership. McNally then proceeded to admonish Bao in front of the group and told her to "think twice" about reporting Leeth in the future.

50. Bao later learned that Northwestern received additional reports about Leeth on December 4, 2020, in which other students accused Leeth of discriminating against them based on race, sex, religion, and disability. Among the accusations was Leeth's repeated use of racial slurs and disparaging a student's celebration of Diwali, while later recommending a book on Christianity to that student.

**F. Empty Gestures by Northwestern Predictably Fail
   to Stop Racial Discrimination and Harassment within the Program**

51. On January 11, 2021, Wicklund announced that the Genetic Counseling Program was developing an anti-racism curriculum and Leeth would be one of the leaders of this initiative.

9

52. On January 27, 2021, certain leaders from the Genetic Counseling Program hosted a meeting for second year students. During this meeting, students asked Wicklund and Duquette how the university was responding to allegations of racism.

53. The following day, Duquette verbally attacked Bao and accused Bao of "plotting against" her and Wicklund. When Bao attempted to respond, Duquette continued attacking her and stated, "[y]ou don't want to see me angry and now you've got me angry." Bao later discovered that another student had notified Wicklund of racist behavior by another administrator within the Genetic Counseling Program.

54. On January 29, 2021, yet another student stepped forward and told Bao that they were the target of racially discriminatory and harassing behavior within the Program.

55. On February 3, 2021, Tamburro told Bao that the university's Office of Equity would open another investigation into Leeth and Wicklund.

56. On February 4, 2021, Bao informed Northwestern that additional students were reporting issues of racially discriminatory and harassing behavior within the Genetic Counseling Program. Bao escalated these concerns to Northwestern's Vice President for Student Affairs on February 5, 2021.

57. Bao notified Tamburro on numerous occasions that she believed she was being retaliated against for her prior reports of discrimination and harassment within the university. Bao specifically told Tamburro that she was being cut out of committee work and thesis projects, and that Wicklund had specifically instructed other faculty members to keep Bao in the dark about everything.

58. Shortly after this report, Wicklund and Duquette told Bao that she would not be able to work during the summer because she was "over" her hours. This was the first time that Bao

was ineligible to work over the summer. Wicklund also told Bao that she was not permitted to attend future planning meetings because of her overage in hours.

G. **Bao's Persistence in Pursuing Justice Results In Her Firing**

59. On July 8, 2021, Northwestern issued a letter which stated that Leeth had violated the university's anti-discrimination policies. Leeth's employment with Northwestern ended a few months later.

60. On July 23, 2021, Wicklund told Bao during a Genetic Counseling Program leadership meeting that her reports of racially discriminatory and harassing behavior within the Program had caused harm to the team and the Program.

61. Thereafter, Genetic Counseling Program leadership took steps to prevent Bao from being involved in any matter which concerned diversity and inclusion within the university. When Bao asked why, Duquette and Wicklund would either yell at her or ignore her.

62. Duquette later remarked during a leadership meeting that Northwestern's Affinity Groups were "not being led by the right folks."

63. Despite these accusations, non-white students continued to rely upon Bao as a source of mentorship and comfort while the Genetic Counseling Program continued its failures to support those students.

64. Years of these issues eventually took a toll on Bao, and as a result, she began developing physical and mental health conditions, including a diagnosis of complex post-traumatic stress disorder due to continued racial harm. As a result, Bao requested time off to heal.

65. While Bao was off work, Northwestern posted her position on job boards.

66. When Bao saw that her job was posted, she emailed her concerns that the university was forcing her out. A week later, Bao's concerns proved true as she was given a separation

agreement and Northwestern told her that she could either accept the separation agreement or resign.

67. On April 25, 2022, Bao was constructively discharged from Northwestern University.

68. The stated reasons for the removal of Plaintiff from the Program were pretext as Plaintiff's forced separation was the result of a pattern and practice of behavior by Northwestern in which the comfort of racist harassers is prioritized above the needs of minority employees and students. As a result, numerous other employees and students have suffered racially discriminatory and harassing behavior while at Northwestern.

69. It is believed that Northwestern acted willfully and in reckless disregard of Bao's rights under Title VII and the IHRA when they repeatedly subjected her to racially discriminatory and harassing behavior; forced her to endure discrimination and harassment at the university while failing to provide her with the resources necessary to deal with such hostility; changed the terms and conditions of her employment after she repeatedly reported incidents of racial discrimination and harassment at Northwestern; and forced her separation from the university.

70. It is also believed that Northwestern acted willfully and in reckless disregard of Bao's rights under the FMLA when it failed to provide Bao with notice of her rights under the FMLA and then interfered with her right to take FMLA leave for a serious health condition.

**H.** **Exhaustion of Administrative Remedies**

71. On August 18, 2022, Bao filed a Charge of Discrimination with the EEOC against Northwestern.

72. Bao's Charge was dual-filed with the Illinois Department of Human Rights.

73. The EEOC sent a letter to Plaintiff, dated March 9, 2023, notifying Bao of her rights to file a civil action against Northwestern.

74. Bao has initiated this civil action within 90 days of receiving the EEOC's Right to Sue Letter.

75. For all applicable claims, Bao has exhausted her administrative remedies under federal and Illinois law.

## COUNT I
Violations of 42 U.S.C § 1981
(Bao v. Northwestern)

76. Plaintiff incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

77. At all relevant times, Bao was an employee of and worked for Northwestern.

78. Northwestern is an employer as defined by 42 U.S.C. § 1981.

79. Plaintiff is Asian American and the acts and omission by Northwestern that are described in this Complaint constitute violations of 42 U.S.C. § 1981.

80. As a proximate result of Northwestern's actions, Bao has or will suffer substantial harm, for which Bao seeks general, compensatory, consequential, and punitive damages.

## COUNT II
Violations of Title VII
(Bao v. Northwestern)

81. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

82. As noted above, Bao was forced to endure racially discriminatory and harassing behavior by Northwestern employees for over two years.

83. The acts and omissions by Northwestern that are described in this Complaint constitute claims for disparate treatment (race), hostile work environment, and retaliation in violation of Title VII.

84. As a proximate result of Northwestern's actions, Bao has or will suffer substantial harm, for which Bao seeks general, compensatory, consequential, and punitive damages.

## COUNT III
Violations of the IHRA
(Bao v. Northwestern)

87. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

88. As noted above, Bao was forced to endure racially discriminatory and harassing behavior by Northwestern employees for over two years.

89. The acts and omissions by Northwestern that are described in this Complaint constitute claims for disparate treatment (race), hostile work environment, and retaliation in violation of the IHRA.

90. As a proximate result of Northwestern's actions, Bao has or will suffer substantial harm, for which Bao seeks general, compensatory, consequential, and punitive damages.

## COUNT IV
Violations of the FMLA
(Bao v. Northwestern)

91. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

92. As a result of the racially discriminatory and harassing behavior that Bao was subjected to for over two years, she developed serious medical conditions.

93. In February 2022, Bao notified Northwestern that she was suffering from serious medical conditions.

94. In response, Northwestern directed Bao to apply for disability leave and failed to provide Bao with notice of her rights under the FMLA.

95. Shortly thereafter, Northwestern terminated Bao's employment.

96. The acts and omissions by Northwester that are described in this Complaint constitute interference under the FMLA.

97. As a proximate result of Northwestern's actions, Bao has or will suffer substantial harm, for which Bao seeks general, compensatory, consequential, and liquidated damages.

## REQUESTS FOR RELIEF

Accordingly, Plaintiff requests that this Court enter judgment on her behalf and enter an order directing the award of other relief, as follows:

A. Finding that Northwestern violated 42 U.S.C. § 1981;

B. Finding that Northwestern violated Title VII;

D. Finding that v violated the IHRA;

D. Finding that Northwestern violated the FMLA;

E. Awarding Plaintiff back pay, front pay, lost benefits, and other emoluments of employment and such other relief as is necessary to make her whole;

F. Awarding Plaintiff compensatory damages for pain, humiliation, emotional distress, and/or damage to reputation;

G. Awarding Plaintiff punitive damages under 42 U.S.C. § 1981, Title VII, and the IHRA;

H. Awarding Plaintiff liquidated damages under the FMLA;

    I.       Awarding Plaintiff attorneys' fees and costs;

    J.       Awarding Plaintiff pre- and post-judgment interest as provided by law; and

    K.      Awarding Plaintiff any other relief to which they are entitled and/or which this Court deems necessary and proper.

A jury trial is demanded for all claims triable by jury.

          Respectfully submitted,

          /s/ *Max Barack*
          Max Barack
          IARDC No. 6312302
          Garfinkel Group, LLC
          701 N. Milwaukee Avenue
          The CIVITAS
          Chicago IL 60642
          Telephone: (312) 736-7991
          Facsimile: (312) 549-9623
          max@garfinkelgroup.com

          **LOCAL COUNSEL FOR PLAINTIFF**

          /s/ Sammy Y. Sugiura
          Sammy Y. Sugiura
          PA I.D. No. 209942
          sammys@jpward.com
          J.P. WARD & ASSOCIATES, LLC
          201 SOUTH HIGHLAND AVE
          SUITE 201
          PITTSBURGH, PA 15206
          TELEPHONE: (412) 545-3016
          FACSIMILE: (412) 540-3399

          **COUNSEL FOR PLAINTIFF**
          (pending *pro hac vice* motion)